**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.W.-1, G.W.-1, J.W.-2, and G.W.-2**

**No. 21-0815** (Kanawha County 21-JA-215, 21-JA-216, 21-JA-217, and 21-JA-218)

**MEMORANDUM DECISION**

Petitioner Mother J.W.-3, by counsel Faun S. Cushman, appeals the Circuit Court of Kanawha County's September 10, 2021, order terminating her parental rights to J.W.-1, G.W.-1, J.W.-2, and G.W.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in accepting her stipulation at adjudication and terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parents have an extensive Child Protective Services ("CPS") history dating back several years. Prior to the filing of the instant petition, the oldest child, G.W.-1, was placed in the permanent guardianship of his paternal grandmother due to the parents' inability to care for him. Then, in 2012, a child abuse and neglect petition was filed against the parents when then-nine-month-old J.W.-1 was brought to the hospital and diagnosed with severe diaper rash and thrush.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as J.W.-1, J.W.-2, and J.W.-3, respectively, throughout this memorandum decision. Two of the other children also share the same initials and so we will refer to them as G.W.-1 and G.W.-2, respectively, throughout this memorandum decision.

The parents were offered services from the DHHR for several months during that case but consistently tested positive for opiates and marijuana. Ultimately, J.W.-1 was also placed in the guardianship of the paternal grandmother. In 2013, a child abuse and neglect petition was filed against the parents after petitioner gave birth to G.W.-2 who tested positive for opiates such as hydrocodone and oxycodone and experienced significant withdrawal symptoms. The parents were offered reunification services during that proceeding but chose to voluntarily relinquish their parental rights at their adjudication hearing and G.W.-2 was likewise placed in the guardianship of the paternal grandmother. In 2017, a child abuse and neglect petition was filed against the parents after J.W.-2 was born drug-affected. The parents received improvement periods and participated in services such as parenting and adult life skills classes and drug treatment. J.W.-2 was ultimately returned to the parents and the matter was dismissed with ninety days of additional services and DHHR supervision.

The instant petition was filed in April of 2021 after the DHHR received multiple referrals regarding the family. The DHHR indicated that the paternal grandmother who had guardianship of J.W.-1, G.W.-1, and G.W.-2 died in April of 2020, and the parents took the children back into their home without reporting it to the DHHR. The DHHR alleged that the parents were suspected of using drugs in the home, that domestic violence occurred in the home, and that the children were frequently very dirty and unbathed. The DHHR further alleged that the living conditions were poor with trash scattered throughout the home. Specifically, in one referral, a teacher observed petitioner staggering back and forth during one of the children's virtual schooling sessions, and the teacher further reported that the home was filthy and piled with trash when she visited the home. A CPS worker spoke to petitioner, who denied the allegations of drug abuse and domestic violence.

The circuit court held a preliminary hearing in May of 2021. A CPS worker testified that the home was malodorous and she had concerns that petitioner was abusing drugs based on her observation of petitioner during their interactions. The CPS worker further stated that the children had been in the parents' care since at least April of 2020, if not earlier, and that the parents had not enrolled the children in school until February of 2021. The CPS worker testified that G.W.-1 was failing all his classes, and that G.W.-2 had an alleged medical issue for which the parents had not sought treatment. Regarding G.W.-2's teacher's referral, the CPS worker stated that she interviewed the teacher, who reported that G.W.-2 normally keeps his camera and microphone turned off during virtual school. However, the teacher reported that, on one day in particular, G.W.-2 turned on his camera and kept turning it toward petitioner to show that she was stumbling around. The CPS worker testified that the teacher believed the child was "trying to ask for help without saying it." According to the CPS worker, when she spoke to petitioner about the children being in her home, she admitted that she should have contacted the DHHR upon the paternal grandmother's death but failed to do so.

Following testimony, the circuit court sustained the petition and ordered the children to be removed from the parents' home. The circuit court found that the evidence established that there had been hygiene issues, poor home conditions, and educational and medical neglect. The circuit court ordered petitioner to participate in a parental fitness evaluation but denied other services at that time because "[t]he rest of the services had been offered in the previous case."

In June of 2021, the circuit court held an adjudicatory hearing. The circuit court placed petitioner under oath, and petitioner affirmed that she understood the purpose of an adjudicatory hearing and the rights she was giving up by offering a stipulation. Petitioner acknowledged that she understood the processes of abuse and neglect proceedings, having previously participated in such proceedings, and that stipulating to the allegations in the petition could lead to the termination of her parental rights. Petitioner stipulated that she failed to properly supervise the children, medically neglected the children, failed to take appropriate care of the children's hygiene, and that she used prescribed Suboxone which may have, at times, made her drowsy and inattentive. Petitioner was emotional during her stipulation but clearly affirmed that she was clear-minded and understood the proceedings. The circuit court found that petitioner had consulted with her counsel and demonstrated an understanding of the nature of the proceedings, as well as the potential consequences. Accordingly, the circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner requested services, and the circuit court denied her request.

The circuit court held a dispositional hearing in September of 2021. Petitioner filed a motion for a post-dispositional improvement period. The DHHR presented the testimony of a CPS worker who recommended the termination of petitioner's parental rights. The CPS worker testified that this was petitioner's fourth child abuse and neglect proceeding and that she had been offered services in each of the three prior proceedings. The CPS worker stated that petitioner had participated in services for a total of approximately one year and nine months during the course of prior proceedings and that there was nothing new the DHHR could offer her in terms of services. The CPS worker further indicated that she did not believe petitioner meaningfully took responsibility for her actions and that, as such, services would be futile. Additionally, petitioner was ordered to submit to a parental fitness evaluation but failed to attend her appointment. Records of the children's psychological evaluations were also admitted into evidence. Petitioner did not testify or offer testimony on her own behalf.

Ultimately, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated her parental rights to the children. The circuit court found that petitioner did not meet her burden of proof in requesting an improvement period as she failed to participate in her parental fitness evaluation and presented no evidence as to her drug treatment, employment, or the condition of her home. The circuit court also relied on petitioner's prior participation in an improvement period and/or services in denying her an improvement period. The circuit court noted that the services in those prior cases "are the exact type of services that would be offered in the present case" and that "[c]learly, the parents did not benefit from those services as the current petition has many of the same issues that ha[ve] plagued this family since the 2012 abuse and neglect case."

The circuit court made extensive findings regarding the children's psychological evaluations, including that the children suffered delays and/or behavioral issues and needed continuing psychological treatment and services, and should be placed in a highly structured home environment. The circuit court noted that the children were thriving in their foster placements and all of the children except J.W.-1 reported that they did not want to be returned to petitioner's care.

Lastly, the circuit court considered that the parents seemingly avoided any professional mandatory reporters, such as teachers and doctors once the children were back in their care so as

to not alert the DHHR. As a result, the children's educational, dental, medical, and mental health needs had been neglected during the year following the paternal grandmother's death. The circuit court found that the parents' CPS history demonstrated that they had fourteen years to correct their problems of substance abuse, domestic violence, failure to provide, and medical and educational neglect and that, despite having been offered a plethora of services, the parents reverted to their past behaviors. As such, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Petitioner appeals the circuit court's September 10, 2021, dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in accepting her stipulation at adjudication when it was clear that she did not understand the ramifications of her actions. Petitioner argues that she was very emotional, was not asked about the binding nature of her stipulation, and did not understand the consequences of such stipulation. As such, petitioner asks this Court to remand the matter to allow for another adjudicatory hearing to take place.

At the outset, we note that there is no prescribed manner in which a circuit court must question a respondent parent who intends to stipulate at adjudication. Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires that any stipulated or uncontested adjudication include (1) the agreed upon facts supporting court involvement concerning the subject parent's problems, conduct, or condition, and (2) a statement of the subject parent's problems or deficiencies to be addressed at the final disposition. Before the circuit court can accept a stipulated or uncontested adjudication, Rule 26(b) requires the circuit court first determine that the subject parent understands the content and consequences of his or her stipulations and is making the stipulations voluntarily.

---

[2]The father's parental rights were also terminated below. The permanency plan for J.W.-1, J.W.-2, and G.W.-2 is adoption by their respective foster families. The permanency plan for G.W.-1 is permanent guardianship by his foster family.

Here, petitioner's counsel specifically questioned petitioner as to her understanding of the ramifications of stipulating to adjudication. Her counsel asked her, "You understand that by stipulating to the allegations in the petition that . . . this case could lead to the permanent termination of your rights? Do you understand that?" To which petitioner clearly responded, "Yes." Petitioner also affirmed that her mind was clear enough to make decisions and that, despite being emotional, she understood everything. Accordingly, petitioner's counsel did, in fact, question petitioner regarding the consequences of her stipulation and the potential for termination of her parental rights. Based on petitioner's counsel's questioning, the circuit court confirmed with petitioner that she did not contest her adjudication and understood that she was stipulating to educational neglect, substance abuse, failure to supervise, medical neglect, and failure to maintain an appropriate home. As such, petitioner has failed to establish that she did not understand the consequences of her stipulated adjudication or that she made it under duress. Thus, we find that petitioner is entitled to no relief in this regard.

Petitioner also argues that the circuit court erred in terminating her parental rights without granting her an improvement period.[3] According to petitioner, she demonstrated that she would fully comply with an improvement period because she successfully completed an improvement period during prior proceedings. Petitioner further claims that she addressed the conditions of the home and remained sober, but states that the other allegations against her "could not be substantially corrected without further interaction with the children" or "[could not] be shown to improve without both the parent and child together." As such, petitioner claims that, without services, she was "doomed to have her parental rights terminated from the start of the case." We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, we have stated that a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. In fact, petitioner failed to offer any testimony or evidence in support of her motion. Thus, contrary to petitioner's claims, she did not establish that she improved the conditions of the home or remained sober. As such, petitioner failed to meet her burden of showing that she was entitled to an improvement period. Moreover, the record is clear that the instant matter was petitioner's fourth abuse and neglect proceeding and that she had been offered services in each of her prior proceedings, although she declined to participate in some. The record demonstrates that petitioner participated in services for a total of nearly twenty-one months and successfully completed an improvement period in the 2017 proceedings. However, petitioner failed to maintain

---

[3]As part of her argument, petitioner argues that certain allegations in the petition were never proven. However, we decline to address this aspect of petitioner's argument as we have already determined that her stipulation to the allegations contained in the petition was valid.

any lasting changes in her behavior, resulting in the filing of the instant proceedings. The circuit court concluded that the services that could have been offered in the instant proceedings were the same services that had already been provided to petitioner, and that the children required permanency. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). While petitioner contends that she was unable to meet her burden of demonstrating that she was likely to participate when there were no services to comply with, the record demonstrates that a parental fitness evaluation was scheduled for petitioner, but she failed to appear. Given petitioner's failure to participate in the one service offered to her during the proceedings below, and the extensive services offered to her during prior proceedings, we find no error in the circuit court's decision to deny petitioner an improvement period.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

We agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner has been the subject of four abuse and neglect proceedings, with services offered to her during three of those prior proceedings. Indeed, petitioner seemingly successfully completed an improvement period around 2017. However, each time a petition was dismissed, petitioner reverted to her prior abusive behaviors. As of the instant proceedings, petitioner had been offered twenty-one months of services but failed to meaningfully address her issues given her repeated digressions in progress. Importantly, petitioner took no steps during the instant proceedings to address the issues of abuse and neglect and failed to attend her parental fitness evaluation. Further, the guardian noted that three of the four children did not wish to be returned to petitioner's care and that all four children were flourishing in their foster parents' care. While petitioner argues that she should have been granted additional time and services prior to the termination of her parental rights, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 10, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment